IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DONNA K.N.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:20-cv-04125-SLD-JEH |

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 13), the Defendant's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Donna K.N. filed an application for disability insurance benefits (DIB) on June 30, 2016, alleging disability beginning on June 3, 2015. Her DIB application was denied initially on November 15, 2016 and upon reconsideration on May 26, 2017. Donna filed a request for hearing concerning her DIB application which was held on February 12, 2019 before the Honorable Robert G. O'Blennis (ALJ). At the hearing, Donna was represented by an attorney, and Donna and a vocational expert (VE) testified. Following the hearing, Donna's claim was denied on April

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

1

25, 2019. Her request for review by the Appeals Council was denied on April 8, 2020, making the ALJ's Decision the final decision of the Commissioner. Donna timely filed the instant civil action seeking review of the ALJ's Decision on June 2, 2020.

## II

At the February 2019 hearing, Donna was 55 years old and lived with her husband and two children. She had a ninth grade education. She had multiple sclerosis (MS). Donna testified that her neurologist was Anil Dhuna, M.D., and she started medication for her MS in about 2011. She did not notice that any of her medications bothered her. If she failed to take her medication, Donna did not sleep at night and had a lot more pain. She originally saw Dr. Dhuna every three months, then every four months, and was currently seeing him every six months. She indicated she became disabled on June 3, 2015 (her alleged onset date) and explained it was at that time that she "[j]ust . . . couldn't do the tasks at work, and – because of the pain and the stress[.]" AR 38.

Donna stated she usually got up from bed at 6 a.m. to make sure her son got to school, she came back in and sat down for a while, and then she tried to do little tasks and sat down in between tasks. She did "[v]ery little" of the household chores, and her husband and son helped with them. AR 42. She usually went outside for a little bit to walk around. She stated that when she walked down to the mailbox, she "usually" took a walking stick with her "just in case." AR 43. She thought the heaviest thing she could lift was a gallon of milk with two hands. She did not ever have to wear any type of brace or wrap or support of any kind for any reason.

Upon questioning by her attorney, Donna testified that her MS "pretty much stays the same." AR 46. Her MS affected her body by causing her a lot of lower back pain, leg pain, and foot pain. She also had muscle spasms and tremors

at night. Heat made her MS worse. She had blurry vision which had become worse in the past few years. Her hands locked up "[m]aybe twice a week." AR 48. She experienced tingling and numbness in her hands that started at her fingertips and traveled up her arms. She said she dropped things as a result. She experienced daily pain and tingling in her legs. She said she had fallen because of the neuropathy in her feet and lost her balance every day. She "usually" carried a cane in the car to have it in case she needed it while she was out. AR 51. She laid down during the day in her recliner for "[p]robably" an hour and took hour long naps only when she did not feel well which was "[m]aybe" twice a week. AR 52. Donna also testified that there was nothing more Dr. Dhuna could do to treat her MS other than regulating her medication.

The VE was then questioned.

### III

At Step Two of the disability analysis, the ALJ determined Donna had the following severe impairments: MS; major depressive disorder; and generalized anxiety disorder. AR 13. At Step Three, the ALJ considered Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), 11.09 (Multiple Sclerosis), 12.04 (Depressive, bipolar and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders) and determined Donna did not have an impairment or combination of impairments that met or medically equaled the severity of any of those listings. As for the "paragraph B" criteria of Listings 12.04 and 12.06, the ALJ found Donna had moderate limitation in interacting with others and concentrating, persisting, and maintaining pace, and she had mild limitation in understanding, remembering, or applying information and adapting or managing oneself.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [C]laimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except that she can occasionally lift and carry fifty pounds and frequently lift up to twenty five pounds. She can sit, stand and/or walk six hours each in an eight-hour workday. She must avoid climbing ladders, ropes or scaffolds. She must avoid working at unprotected heights and around dangerous machinery. She must avoid concentrated exposure to extreme heat and humidity. She must avoid jobs that require ambulating on unimproved terrain. She is limited to simple, repetitive work with no close interaction with the public.

AR 15. In making that RFC finding, the ALJ considered Donna's July 2016 and January 2017 Adult Function Reports in which she said her conditions affected her ability to lift, squat, bend, stand, walk, sit, kneel, hear, use her hands, climb stairs, see, understand, remember, concentrate, complete tasks, and get along with others. She also said she sat when doing personal care tasks, she did little laundry and sweeping, she was able to pay bills and count change, she became angry and upset with people, she did not handle stress or changes in routine very well, and she used a cane for balance. The ALJ also considered Donna's husband's Third Party Adult Function Reports in which ne noted "very similar, if not the same, limitations as those noted within the claimant's own reports." AR 16. The ALJ explained that "[r]ephrasing or reassertion of the claimant's own allegations, in a different format, is not a basis for a finding of disability." *Id*. The ALJ discussed the treatment Donna received for depression and anxiety, the daily activities she engaged in, the lack of documented medication side effects, and the lack of documented refusal of treatment or medication for any reason, including insufficient funds.

The ALJ also addressed neurologist Dr. Dhuna's treatment records dated between November 2014 and October 2018 which included his notation that Donna was unable to work due to her chronic fatigue and back pain. At her

psychological consultative evaluation in August 2016, Donna complained of stress and chronic fatigue and described symptoms including social isolation, fatigue, irritability, and psychomotor impairment. Still, her thoughts were logical and easy to follow, and her long-term memory was average. At her April 2017 psychological consultative evaluation, Donna's mood was irritable, she stated she was limited by pain most days, and she stated that before she quit work she had decreased concentration and difficulty getting along with coworkers. Her hygiene and grooming were adequate, she approached the evaluation and evaluator in a cooperative manner and developed adequate rapport, she was unaccompanied, her short-term memory was intact, and there were no significant deficits noted in affect, thought process or content, psychomotor activity, or cognition.

At her August 2016 internal medicine consultative examination, Donna was in no distress, she was able to get on and off the examination table with no difficulty, and there were no signs of depression, agitation, irritability, or anxiety noted. At her April 2017 internal medicine consultative examination, Donna had decreased sensation to light touch over the chest wall, abdomen, and thighs, but the examiner noted she was well built and well nourished, had no loss of motion, and was able to get on and off the examination table without difficulty. She was also pleasant and cooperative without signs of depression, agitation, irritability, or anxiety.

Dr. Dhuna opined in March 2018 that Donna had the RFC to: lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk less than two hours and sit about two hours in an eight-hour workday; occasionally twist and climb stairs, but never stoop, crouch, or climb ladders; occasionally reach, handle, finger, feel, and push and pull; avoid concentrated exposure to extreme cold and pulmonary irritants; and avoid all exposure to extreme heat and high humidity. He further noted that Donna required the

5

opportunity to shift positions at will and would need to walk around ten times a day and would only be able to sit 30 minutes at one time, stand 15 minutes at one time, and walk five minutes at one time. Donna would also require unscheduled breaks for five to 20 minutes, and her symptoms would interfere with her attention and concentration to perform even simple work tasks at least 10 percent of a typical work day. Finally, Dr. Dhuna estimated Donna would likely miss work four or more days per month due to her impairments or treatment thereof. Dr. Dhuna indicated the medical finding of MS supported the limitations in postural activities to which he opined, and the symptoms of chronic fatigue and pain/parasthesias, numbness caused Donna's need for breaks.

     State Agency medical doctors provided physical RFC assessments in November 2016 and May 2017. They opined to Donna's RFC to perform medium work. The ALJ highlighted the State Agency doctors' note that "overall, [claimant] presents as one with no imaging or laboratory reports in order to document any of her severe impairments, including that of back, knees and MS . . . overall, claimant is determined capable of sustaining a broad range of medium work on the basis of her complaint of pain." AR 20 (citing AR 83, 99). The ALJ gave the State Agency medical doctors' opinions "great evidentiary weight" because "they are medical experts who had an opportunity to review the records and their findings of limitations and opinions are consistent with the record as a whole." *Id*. The ALJ gave "partial evidentiary weight" to the findings of limitations and opinions within the assessments by the State Agency psychologists; they opined Donna retained the capacity to understand and remember multi-step instructions, had the attention and concentration necessary to persevere at and complete those operations for time periods usually expected in the work force, retained the capacity to maintain a schedule and be on time, and had lowered social tolerance due to depression and anxiety. However, the ALJ found that because Donna was

noted to have chronic pain and fatigue, she was found to have decreased concentration due to a combination of pain and depression and anxiety such that it was "reasonable to find she is limited to simple and/or repetitive work." AR 20.

## IV

Donna argues: 1) the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of treating physician Dr. Dhuna; and 2) the ALJ erred in his RFC determination.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some

other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Donna claims error on the ALJ's part at Step Four.

### A

Donna first argues that in light of the fact the treating physician rule applied to her DIB claim, the ALJ did not properly evaluate her treating physician Dr. Dhuna's March 2018 opinion. Specifically, she argues the criteria in 20 C.F.R. § 404.1527 of examining relationship, treatment relationship, specialization, and supportability reveals that the ALJ did not perform the requisite evaluation of that criteria. The Commissioner counters that the ALJ reasonably weighed the medical opinion evidence regarding Donna's physical limitations.

20 C.F.R. § 404.1527(c) provides:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. *Id*. An ALJ must give controlling weight to the medical opinion of a treating physician only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2).[2]

---

[2] The treating physician rule found in 20 C.F.R. § 404.1527 has since been eliminated by the Social Security administration. However, the rules in § 404.1527 apply to claims filed before March 27, 2017.

In his Decision, the ALJ detailed Dr. Dhuna's opined-to physical limitations for Donna in his March 2018 Medical Source Statement of Ability to do Work-Related Activities (Physical), and the ALJ considered that Dr. Dhuna noted Donna was physically limited as he opined due to chronic fatigue and pain. The ALJ ultimately assigned "little evidentiary weight" to Dr. Dhuna's findings of limitations because those limitations were "not consistent with the record as a whole, particularly [Dr. Dhuna's] own treatment records, which routinely note the claimant with a normal gait, normal muscle strength, normal sensation, normal affect, etc." AR 20. The ALJ articulated the following evidence was inconsistent with Dr. Dhuna's opinions: Donna "routinely" did not need an assistive device when walking and was not in any distress; and Donna had no difficulties getting on and off the examination table, did not use an assistive device when walking, was pleasant and cooperative, her behavior was normal and her cognition was intact at her consultative examinations. The ALJ also articulated that Donna's alleged fatigue was not accompanied by findings by treating physicians of "significant loss of strength or atrophy related to a fatigue-induced sedentary lifestyle," or by "objective medical findings by treating physicians of significant cognitive dysfunction and somnolence related to overwhelming fatigue." *Id*. The ALJ undeniably built a logical bridge between the evidence of record and his explicit conclusions that Dr. Dhuna's March 2018 opinions were insufficiently supported and were inconsistent with the balance of the evidence. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (stating an ALJ "must build a logical bridge from evidence to conclusion").

To illustrate further, earlier in the Decision, the ALJ detailed Dr. Dhuna's treatment notes which: noted Donna's reports of easily fatigued due to chronic pain; indicated Donna was doing well on Tecfidera for MS, had normal gait, and did not require urgent or hospitalizations for MS exacerbations; and provided no

findings of atrophy, loss of motion or strength in her extremities, sensation loss or other neurological defects. At her August 2016 psychological consultation, Donna had driven herself to the examination, ambulated independently, and declined the need for assistance. She also had logical and easy to follow thoughts with average long-term memory. Similarly, at her April 2017 consultative psychological evaluation, Donna had unremarkable posture and gait, she approached the evaluation in a cooperative manner and developed adequate rapport, and no significant deficits were noted in thought process, thought content, or cognition. At her August 2016 internal medical consultative examination, Donna was in no distress, there was no atrophy or loss of strength, straight leg raise was negative, she could walk greater than 50 feet without support, she had a non-antalgic gait, she was able to grasp and manipulate objects, and her appearance, behavior, and ability to relate during examination were normal. At her April 2017 internal medicine consultative examination, Donna was noted to be well built and well nourished, there were no findings of decreased strength or atrophy, she could perform heel/toe walk and walk greater than 50 feet without support and without the use of an assistive device, she could fully extend her hands, and she was able to grasp and manipulate objective and make a fist. She also exhibited no signs of depression, agitation, irritability, or anxiety.

Donna attempts to show the ALJ's supportability analysis was erroneous given that certain notes in Dr. Dhuna's records indicated Donna suffered from fatigue, choric pain, and depression. That such notations appeared in Dr. Dhuna's treatment records does not nullify the substantial evidence the ALJ cited from within Dr. Dhuna's treatment records which did not support his opinion. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). In fact, the ALJ continually referred to

11

Donna's complaints of fatigue and pain throughout the Decision, and he considered her depression diagnosis. As the Commissioner argues, Dr. Dhuna's notes included Donna's subjective complaints such as his March 20, 2018 notation that Donna continued to complain of fatigue and lower extremity weakness needing frequent rest breaks. AR 406. The supportability criterion of Section 404.1527(c) speaks of "relevant evidence . . . particularly medical signs and laboratory findings" to support a medical opinion rather than a patient's subjective reports of symptoms. 20 C.F.R. § 404.1527(c)(3); *see also Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it).

As for the additional criteria the ALJ was required to consider, the ALJ acknowledged the extent of the treatment (specifically the length and nature and extent of it) and examining relationship between Dr. Dhuna and Donna; he considered that treatment records from Dr. Dhuna "of Neurology & Sleep Clinic note care every four to six months for [MS]." AR 17. The ALJ began his review of those records with a citation to one dated November 4, 2014, which was several months before Donna's alleged disability onset date. In her Reply, Donna argues Dr. Dhuna's opinion was not on equal footing with other opinions of record[3] under Section 404.1527 where Dr. Dhuna was a specialist about Donna's MS given that he was her neurologist. But Section 404.1527(c)(5) provides that the Social Security Administration (SSA) will only "*generally* give more weight to the medical opinion of a specialist," not that SSA must do so in every instance. 20 C.F.R. § 404.1527(c)(5) (emphasis added). Moreover, the Seventh Circuit Court of Appeals recently stated it "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor," and "will affirm the ALJ's decision

---

[3] Donna made no argument as to the ALJ's consideration of the other opinions of record in her initial brief.

if we are confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors." *Ray v. Saul*, 861 F. App'x 102, 105-06 (7th Cir. 2021) (unpublished opinion). In light of the ALJ's robust analysis of Dr. Dhuna's opinion and statements including that "the record is silent for documentation of [Donna frequently falling] from her treating physician or *neurologist*," the ALJ did not erroneously weigh Dr. Dhuna's opinion pursuant to Section 404.1527(c). AR 22 (emphasis added).

### B

Donna next argues that the ALJ erred in his RFC determination in that he articulated an RFC for when Donna's MS was in remission. She says her treating doctor's opinions addressed the issue of MS flares, and the ALJ cannot just ignore the relapses as his Decision did. She posits the ALJ created an unsupported RFC of medium work because he knew that a sedentary RFC as of Donna's alleged onset date (when she was 51) would have met the medical/vocational guidelines, and he knew that a light RFC as of the hearing date (when she was 55) would have caused Donna to "grid" (be found disabled). The Commissioner argues that ALJ reasonably considered the objective evidence of Donna's physical impairments, that ALJs are not supposed to consider age when assessing exertional limitations, and that Donna's arguments amount to asking the Court to find that individuals with MS are *per se* disabled.

A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). Here, it is apparent that the ALJ

13

considered the objective presentation of Donna's MS over the course of several years at regular intervals alongside Donna's statements as to her symptoms during that same time period.

The ALJ considered Donna's repeated complaints of pain and fatigue, one instance of antalgic gait due to back pain, her reports of off-balance gait, her report of an ability to lift only 10 pounds, and her statement that she was not able to walk far and could not lift like she used to. But against that backdrop of the symptoms and limitations Donna reported, the ALJ considered Donna's repeatedly normal examination findings. Also, neurologist Dr. Dhuna repeatedly noted normal gait and no decrease in strength, and medical assessment indicated normal sensation. Consultative examiner Afiz A. Taiwo, M.D. observed normal range of motion, normal gait, and normal strength in August 2016, and he observed normal walk, "no difficulty" with maneuvers such as tandem walking and manipulating small objects, and no weakness or atrophy in April 2017. The ALJ also considered that during the timeframe he reviewed, Dr. Dhuna noted a slight increase in the size of the lesion in Donna's frontal lob in August 2016, but it was noted that findings on imaging were stable and the brainstem and cerebellum were intact. The ALJ considered that Donna remained on Tecfidera for MS as she was doing well on it.

Beyond Donna's objective medical findings, the ALJ observed there were "many inconsistencies in [Donna's] testimony and statements she made to her treating physicians, examiners, and the noted objective medical findings." AR 21. He noted her statement of loss of balance and pain, but also her statement that she went outside and walked around. He noted her statement that her vision was blurry and had gotten worse, but also that the record was silent for documentation of any treatment or evaluation by an ophthalmologist. He noted her stated difficulty handling things, but also noted the consultative examiner found no limitations in grasping or manipulation. He noted her statements that she had

fallen probably four times in the last month before the hearing, but also that the record was silent for documentation of such from her treating physician or neurologist, the record did not contain any documentation for possible injuries sustained from frequent falls, and the records did not document a prescription for an assistive device and instead included her testimony that she only sometimes used a walking stick.  The ALJ also observed that medical records documented when compliant with medication, Donna's impairments were controlled and thus the ALJ stated, "[i]mpairments that can be controlled by treatment or medication are not disabling."  AR 22.  Notably, the ALJ's RFC finding did not entirely disregard Donna's subjective statements of limitation.  Donna stated that heat made her MS worse, and so the ALJ included in the RFC that Donna must avoid concentrated exposure to extreme heat and humidity.  Donna complained of imbalance and falling, and the so the ALJ included in the RFC that Donna must avoid jobs that required ambulating on unimproved terrain.

      Far from leaving any doubt in how the evidence supported each conclusion he made, the ALJ summarized that objective medical findings by treating physicians did not include significant deficits in Donna's physical abilities to squat, stand, walk, sit, lift, carry, bed or stoop "lasting twelve months in duration."  AR 22.  He summarized there was no medical evidence that Donna was prescribed or required the prolonged use of an assistive device for ambulation.  Donna was not frequently reported to be in acute distress.  She was not reported to exhibit significant pain behaviors or signs.  The medical treatment records did not document urgent care or hospitalizations due to MS "exacerbations" or "flare-ups."  AR 17, AR 21.  The ALJ's statements of "twelve months duration," "long-term" significant deficits, "twelve consecutive months," and MS "exacerbations" and "flare-ups" reveal he was well aware of the necessity to account for trajectory (the relapsing/remitting nature) of Donna's MS.  *See Carlson v. Shalala*, 999 F.2d

15

180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning").

While Donna relies in part upon Dr. Dhuna's opinions to challenge the RFC finding, the Court explained *supra* that the ALJ did not erroneously consider that opinion and supported the weight he gave it with substantial evidence. While Donna points to lesions on her brain as the objective evidence supportive of her subjective complaints, she does not explain how that evidence alone undermines all the other objective evidence the ALJ cited as a basis to reject the extent of limitation Donna alleged her symptoms caused. While Donna suggests the ALJ incorrectly labeled her March 2018 examination normal where she was continued on several medications, she cannot seriously be arguing that the continued treatment of an impairment with medication alone renders an impairment disabling. That would turn the analysis an ALJ must perform on its head. Lastly, Donna apparently believes there was no way the ALJ got his analysis right where he concluded a person in her 50s with relapsing/remitting MS could perform medium work. In the end, "even if reasonable minds could differ concerning whether [a claimant] is disabled, [the court] must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The ALJ's RFC finding is adequately supported as demonstrated herein. Furthermore, as the Commissioner points out in her brief, "Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age . . . ." SSR 96-8p at *1.

# V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 13) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Donna K.N., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on November 16, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE