UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DONA K. N., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-04125-SLD-JEH |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court are Plaintiff Donna K. N.'s motion for summary judgment, ECF No. 13; Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 15; Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 17, recommending that the Court deny Donna's motion and grant the Commissioner's motion; and Donna's objection to the R&R, ECF No. 18. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, Donna's motion for summary judgment is DENIED, and the Commissioner's motion for summary affirmance is GRANTED.

BACKGROUND[2]

I. **Procedural Background**

On June 30, 2016, Donna filed an application for disability insurance benefits ("DIB"), alleging disability beginning June 3, 2015. Her claim was denied initially and upon reconsideration. Donna then requested a hearing, which took place before an administrative law

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted for her predecessor. The Clerk is directed to update the docket accordingly.
[2] Judge Hawley's R&R provides a detailed summary of the background of this case and the ALJ's decision. *See* R&R 1–7. The administrative record can be found at ECF No. 8. Citations to the record take the form: R. __.

1

judge ("ALJ") on February 12, 2019.  The ALJ issued a decision denying Donna's claim for benefits on April 25, 2019.  The Appeals Council denied her request for review on April 8, 2020; as such, the ALJ's April 25, 2019 decision is the final decision of the Commissioner.  *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).  Donna timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g), Compl. 1–2, ECF No. 1.  Donna filed a motion for summary judgment on January 14, 2021, and the Commissioner filed a motion for summary affirmance on March 5, 2021.  The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on November 16, 2021.  Donna timely filed an objection on November 18, 2021.

## II.    ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), concluding that Donna was not disabled during the relevant period.  R. 11.  At step one, he found that Donna had not engaged in substantial gainful activity since June 3, 2015, the alleged onset date.  R. 12.  At step two, he found that Donna had the following severe impairments: multiple sclerosis ("MS"), major depressive disorder, and generalized anxiety disorder.  R. 13.  At step three, the ALJ found that the severity of Donna's physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13.  Next, he found that Donna had the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c) except that she can occasionally lift and carry fifty pounds and frequently lift up to twenty five pounds.  She can sit, stand and/or walk six hours each in an eight-hour workday.  She must avoid climbing ladders, ropes or scaffolds.  She must avoid working at unprotected heights and around dangerous machinery.  She must avoid concentrated exposure to extreme heat and humidity.  She must avoid jobs that require ambulating on unimproved terrain.  She is limited to simple, repetitive work with no close interaction with the public.

R. 15 (emphasis omitted). At step four, the ALJ found that Donna was unable to perform her past relevant work. R. 23. At step five, he found that, considering Donna's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. R. 23. Accordingly, the ALJ found that Donna was not disabled. R. 24.

## DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id*. 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied Social Security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a

critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

    **II.    Analysis**

At summary judgment, Donna argues that the ALJ failed to accord adequate weight to the opinion of treating physician Dr. Anil Dhuna pursuant to 20 C.F.R. § 404.1527 and that the ALJ failed to build a bridge between the medical evidence and Donna's testimony and her RFC. Pl.'s Mot. Summ. J. 6–11. The Commissioner counters that the ALJ did not err in either regard and that Donna is essentially "asking this Court to find that individuals with MS are per se disabled." Def.'s Br. Supp. Mot. Summ. Affirmance 1, 5, ECF No. 15-1. Judge Hawley finds that the ALJ engaged in a "robust analysis of Dr. Dhuna's opinion and statements" and did not fail to follow the requirements of 20 C.F.R. § 404.1527(c). R&R 13. He further concludes that the ALJ's RFC finding was adequately supported. *Id.* at 16. Accordingly, he recommends that the Court deny Donna's motion for summary judgment and grant the Commissioner's. *Id.* at 17. Donna objects to both of these findings, *see* Obj. 1–2, so the Court will review them de novo. First, though, the Court will briefly address a thread that runs throughout Donna's arguments: how the nature of a relapsing/remitting disease like MS should affect the Court's analysis.

    **a.    Nature of MS**

Donna argues throughout her briefing that the ALJ failed to account for the nature of her remitting/relapsing MS, which involves periods of flare-ups and periods of remission. *See* Pl.'s Mot. Summ. J. 8–9 (arguing that with remitting/relapsing MS, "[o]ne cannot just tote up the times things are normal and say a person is not disabled"); *id.* at 10 ("The ALJ cannot just ignore the relapses [in her MS] as his decision does."); *id.* at 11 ("To conclude someone with chronic fatigue due to MS should be lifting 50 pounds on the job and stand or walk six hours of an eight

4

hour work day, is to show this ALJ does not understand the nature of this disease."); Obj. 2 ("A person with MS understands the waxing and waning nature of the symptoms . . . .").

The Court does not disagree that the nature of MS is a relevant consideration in its evaluation of this case. Social Security regulations provide that where "an individual's impairments are subject to temporary remission," the ALJ must "be careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings" before concluding that a claimant is not disabled during a period of remission. 20 C.F.R. § 404.1594(c)(3)(iv). Thus, courts evaluating the Social Security claims of individuals with MS and other relapsing/remitting diseases look to the whole history of the claimant's disease progression and treat periods of remission not as automatic evidence of the non-existence of a disability but as merely one piece of evidence to be considered. *See, e.g.*, *Rios v. Colvin*, No. 14 C 2433, 2016 WL 2986972, at *7 (N.D. Ill. May 24, 2016) (finding that medical records showing that a plaintiff with MS was able to walk and had good strength were "simply snapshots at a given period, and not necessarily inconsistent with [the] [p]laintiff's claims of fluctuating symptoms given the evidence in this case"); *Stephanie G. v. Saul*, No. 20 C 4210, 2021 WL 2660768, at *9 (N.D. Ill. June 29, 2021) (stating that the ALJ could not "just ignore the many times [the] plaintiff was incapacitated, even for just a few days here and there, and say overall, she is capable of sedentary work"); *Wilcox v. Sullivan*, 917 F.2d 272, 274 (6th Cir. 1990) (finding that although "most of [the claimant's] examinations were conducted while the disease was in remission," the record nonetheless "clearly reflect[ed] several periods of exacerbation"); *Vincil v. Comm'r of Soc. Sec.*, No. 12-12728, 2013 WL 2250580, at *13 (E.D. Mich. May 22, 2013) (noting that "multiple sclerosis is, by its very nature, a disease that waxes

and wanes" and that "the presence of some signs of periodic remission" was not inconsistent with opinions emphasizing the severity of the plaintiff's condition).

But while periods of remission need not compel a finding of no disability, in order for benefits to be awarded, there must be some evidence that the claimant suffers from flare-ups of the disease that would support limitations. Merely because a disease generally has periods of exacerbation and remission does not mean that an ALJ must find a claimant disabled if the medical record contains no evidence showing flare-ups or exacerbation. *See Hilkert v. Astrue*, No. 12-CV-55-JPS, 2013 WL 149347, at *5 (E.D. Wis. Jan. 14, 2013) (finding that the ALJ had built a logical bridge between the evidence and his denial of benefits to the claimant where he "point[ed] to an extensive amount of evidence contemporaneous with the eligibility period to paint a picture that [the claimant's] MS was generally in remission and stable and, to the extent that exacerbations occurred, these were effectively controlled by medication"); *Wheatman v. Berryhill*, No. 16 C 8639, 2018 WL 6179109, at *7 (N.D. Ill. Nov. 27, 2018) (disagreeing with the claimant's argument that "because Crohn's disease is characterized by periods of remission and recurrence, the ALJ should have assumed that despite several years of minimal symptoms and remission, the undocumented period during which [the claimant] did not attempt to receive any treatment was likely a period of active Crohn's symptoms").

The Court will keep these principles in mind when evaluating the ALJ's actions below.

**b. Dr. Dhuna's Opinion**

In her motion for summary judgment, Donna argues that "the ALJ did not properly evaluate the opinion of" Dr. Dhuna. Pl.'s Mot. Summ. J. 6. She contends that the ALJ failed to evaluate the factors set forth in 20 C.F.R. § 404.1527(c) and disagrees with the weight the ALJ ultimately determined he should give Dr. Dhuna's opinion. *See id*. at 7–9; *see also* Pl.'s Reply 2,

ECF No. 16 (arguing that because Dr. Dhuna is a neurologist who treated Donna for several years, opinions from consulting physicians "were not on equal footing" with Dr. Dhuna's opinion).

20 C.F.R. § 404.1527 establishes rules for how ALJs evaluate medical opinion evidence when determining whether a claimant is disabled.[3] Special weight may be given to a medical opinion provided by a treating source, which is defined as a claimant's "own acceptable medical source who provides [her], or has provided [her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her]," *id*. § 404.1527(a)(2). "If [an ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion will be afforded controlling weight. *Id*. § 404.1527(c)(2).

When the opinion is not given controlling weight, the ALJ will address factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, whether the treating source is a specialist in the area, and any other relevant factors in determining the weight to give the medical opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "If the ALJ discounts the physician's opinion after considering these factors, [the court] must allow that decision to stand so long as the ALJ minimally articulate[d] his reasons—a very deferential standard . . . ." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (second alteration in original) (quotation marks omitted); *see Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ . . . may discount a treating physician's medical opinion if . . . the opinion is inconsistent with the

---

[3] This regulation applies only to claims filed before March 27, 2017.

opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." (quotation marks omitted)).

The ALJ noted that in a March 20, 2018 Medical Source Statement of Ability to do Work-Related Activities (Physical) ("Medical Source Statement"), Dr. Dhuna wrote that Donna suffered from chronic fatigue and pain, as a result of which she had a variety of physical limitations. R. 19. However, the ALJ "g[ave] little evidentiary weight to the findings of limitations and opinions by Dr. Dhuna" because "Dr. Dhuna's limitations [we]re not consistent with the record as a whole, particularly his own treatment records." R. 20. For example, Dr. Dhuna's opinion that Donna "could only walk five minutes at a time and pay attention only ten percent of a typical workday" was inconsistent with his medical records in which he reported that Donna had "a normal gait, normal muscle strength, normal sensation, normal affect, etc.," "routinely did not need an assistive device when walking and . . . was not in any distress," and "had no difficulties getting on an[d] off the examination table, . . . did not use an assistive device when walking, . . . [and] was pleasant and cooperative," and that "her behavior was normal, [and] cognition was intact." R. 20. Moreover, "her allegations of fatigue [we]re not accompanied by findings, by treating physicians, of significant loss of strength or atrophy related to a fatigue-induced sedentary lifestyle." R. 20. The ALJ found Donna's "allegations [we]re not accompanied by objective medical findings, by treating physicians, of significant cognitive dysfunction and somnolence related to overwhelming fatigue." R. 20.

The Court finds that the ALJ adequately supported his determination that the opinion was inconsistent with Dr. Dhuna's own records and the record as a whole and thus did not err in not affording controlling weight to Dr. Dhuna's opinion. *See Schmidt*, 496 F.3d at 842–43 (finding

8

that the ALJ adequately explained his decision not to give controlling weight to treating physicians' opinions where he discussed the inconsistencies between their treatment notes and conclusions).

Nor did the ALJ impermissibly ignore evidence in Dr. Dhuna's opinion that contradicted his conclusion.  *Cf. Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (noting that the ALJ may not "select and discuss only that evidence that favors his ultimate conclusion").  The Medical Source Statement does not include an explanation for the physical limitations Dr. Dhuna provides except for an isolated notation of "MS."  *See* R. 399–402.  The treatment notes from the same date likewise do not explain the specific restrictions.  *See* R. 406–08 (noting "[n]ormal strength and gait").  While the record contains references to Donna's self-report of pain and fatigue, *see* R. 406 ("The patient has continued complaints of fatigue, difficulty with low back discomfort and lower extremity weakness . . . ."); *id*. ("The patient recently had a flare-up of her back pain . . . but fortunately this has improved."), the Seventh Circuit has found that "where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it."  *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013).

The other treatment notes made by Dr. Dhuna since the alleged onset date likewise do not provide support or explanation for Dr. Dhuna's limitations, which the ALJ addresses in his decision.  *See* R. 20 (noting that Dr. Dhuna's treatment notes contained in the record as a whole were not consistent with his limitations opinion).  Indeed, although the reports continue to detail Donna's own subjective symptoms, they consistently show "[n]ormal gait and strength," responsiveness to medication, and no objective evidence pertaining to the proposed limitations. *See* R. 327–29 (June 23, 2015 treatment notes); R. 355–57 (July 19, 2016 treatment notes); R. 352–54 (August 16, 2016 treatment notes); R. 349–51 (December 20, 2016 treatment notes); R.

409–11 (August 7, 2017 treatment notes).[4]  The ALJ's conclusion that Dr. Dhuna's own treatment notes do not support his opinion as to Donna's limitations is well supported.  *See Cooley v. Berryhill*, 738 F. App'x 877, 880 (7th Cir. 2018) ("An ALJ may discount a doctor's statements that are not adequately explained if the treatment notes do not clarify the doctor's reasoning.").

    Furthermore, contrary to Donna's representation, *see* Pl.'s Mot. Summ. J. 8, the ALJ addressed all the factors required by 20 C.F.R. § 404.1527(c).  He noted that Dr. Dhuna was treating her as of November 2014 and sees her every four to six months, R. 17, establishing that Dr. Dhuna has examined her, that he is a long-term care provider rather than a consulting physician, and that he has treated her since 2014 at intervals of four to six months, *see* 20 C.F.R. § 404.1527(c)(1)–(2)(i).  The ALJ's decision also included that Dr. Dhuna treats Donna for MS—one condition for which she is claiming disability—and detailed some tests Dr. Dhuna performed or ordered performed on Donna regarding her MS, including an MRI of her brain and laboratory tests.  R. 17; *see* 20 C.F.R. § 404.1527(c)(2)(ii).  As noted above, the ALJ found that Dr. Dhuna's opinion was not supported by objective medical findings and was not consistent with the record as a whole.  *See* R. 20; *see* 20 C.F.R. § 404.1527(c)(3), (4).  The ALJ noted that Dr. Dhuna worked at a neurology and sleep clinic and treated Donna specifically for MS.  R. 17; *see* 20 C.F.R. § 404.1527(c)(5).  Finally, Donna does not point to any other factors she believes the ALJ should have considered in his evaluation.  *See* 20 C.F.R. § 404.1527(c)(6).  Because the ALJ addressed all of these factors and, as noted above, "minimally articulate[d] his reasons" for

---

[4] Dr. Dhuna's records from December 20, 2016 report that a recent MRI of Donna's brain "showed a slight[] increase[] in size of the lesion on the left frontal lobe," although he does not elaborate beyond this as to whether the increase resulted in any physical limitations or impacted Donna's abilities in any way.  *See* R. 349.  The ALJ addressed the increase in the lesion's size and noted that "the findings on the imaging were stable and there was no mass effect or enhancement," that "[t]he brainstem and cerebellum were intact," and that "[t]here were no signs of acute infarct."  R. 17 (citing R. 419–20).

according Dr. Dhuna's opinion little weight, he did not err in his evaluation of the opinion. *See Elder*, 529 F.3d at 415 (alteration in original) (quotation marks omitted); *see also Ray v. Saul*, 861 F. App'x 102, 105–06 (7th Cir. 2021) (stating that a court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor" and "will affirm the ALJ's decision if [it is] confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors").

Donna disagrees with the ALJ's assessment of the supportability of Dr. Dhuna's opinion because the opinion notes that she has remitting/relapsing MS, which supports that she may have periods in which she appears recovered between flare-ups of the disease. Pl.'s Mot. Summ. J. 8–9. But the ALJ addressed that he found the lack of objective medical findings as to periods of exacerbation of Donna's MS to undermine the supportability of the opinion, R. 20; *see also* R. 21 ("The medical treatment records do not document . . . treatment due to multiple sclerosis flare-ups."), a factor ALJs consider in assessing supportability. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion.").

Donna additionally argues that she "finds it troubling that while the [R&R] acknowledges that Section 404.1527(c) (5) states that the opinion of a specialist will *generally* be given more weight, it was appropriate in this case to ignore treating neurologist Dr. Dhuna's opinion as to the limitations caused by [her] MS." Obj. 1. Merely because an ALJ "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist" does not mean that an

11

ALJ cannot discount the opinion of a specialist where he finds that opinion unsupported by medical evidence and inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(5).

Donna has failed to show any error on the ALJ's part in weighing Dr. Dhuna's opinion.

### c. RFC

Donna also argues that the ALJ erred in his determination of her RFC. Pl.'s Mot. Summ. J. 9–11. She contends that the RFC the ALJ articulated—which provided that she could perform medium work—was only appropriate for when her MS was in remission and that "[t]he ALJ did not address what would happen when her MS was flared." *Id*. at 9–10. Because she provided evidence of her medical issues when her MS was flared and the ALJ ignored it, she asserts, he "fail[ed] to build the bridge between the medical evidence (along with [her] testimony) and his conclusion [she] could perform medium work." *See id*. at 10.[5] In her objection, Donna reiterates her belief that the ALJ erred by failing to consider the effect flare-ups have on those suffering from MS. Obj. 1–2. An assessment based on doctors' reports of "normal gait and strength" simply does not, in her opinion, account for the "waxing and waning nature of the symptoms" of MS. *Id*.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ will look to "all the relevant evidence in [the] case record. *Id*. This includes "both the medical and nonmedical evidence," including

---

[5] Donna further states:

> The ALJ knows that at a sedentary RFC, at age 51, [she] would have met the medical/vocational guidelines. At the time of the hearing, [she] had reached 55, so an RFC of light would have caused [her] to "grid." Thus the ALJ creates the unsupported RFC of medium, so the grid does not apply.

Pl.'s Mot. Summ. J. 10. It appears from this that Donna wants the Court to find that the ALJ had an improper motive in assigning her an RFC of medium—to ensure that she did not "grid." It is unclear what impact Donna believes this will have on the Court's analysis. The Court will review whether the ALJ erred in his RFC assessment, an analysis which does not take into consideration any improper motivation on the ALJ's part.

12

the claimant's testimony. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). When evaluating the claimant's allegations of symptoms, the ALJ uses a two-step process. *See* Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[6] First, the ALJ will determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id*. at *3. If there is, he will then "evaluate the intensity and persistence of [the] individual's symptoms such as pain and determine the extent to which [the] individual's symptoms limit his or her ability to perform work-related activities," looking to the entire case record including the objective medical evidence and the claimant's statements about her symptoms. *Id*. at *4. When addressing the claimant's own statements, the ALJ "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. at *8. He must "explain which of an individual's symptoms [he] found consistent or inconsistent with the evidence . . . and how [his] evaluation of the individual's symptoms led to [his] conclusions." *Id*.

     The ALJ discussed Donna's testimony and statements in detail, including her allegations of pain and fatigue. R. 16–17. He also addressed the medical record and the conclusions of the doctors who evaluated Donna. R. 17–20. He then engaged in the two-step process laid out in SSR 16-3P. He stated that Donna had been diagnosed with MS and that her self-reported

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

symptoms were consistent with a diagnosis of MS. *See* R. 21, 23. But he found that her statements were inconsistent with the objective medical evidence—the medical records did not show significant vision loss or blurring, pain with movement, tremor, lack of coordination, unsteady gait, ongoing and severe dizziness, significant and reproducible fatigue and muscle weakness during repetitive activity, paralysis or muscle spasms, significant numbness and weakness in more than one limb, or the triggering of symptoms with body temperature increases. R. 21. Furthermore, "[t]he medical treatment records d[id] not document frequent urgent care, hospitalizations, or treatment due to multiple sclerosis flare-ups" or regular treatment through a pain clinic. R. 21, 22. And "[t]here is no medical evidence that the claimant was prescribed, or determined to require, the prolonged use of an assistive device such as a cane or brace for the purpose of ambulation, motion, or immobilization." R. 22. In short, no objective medical evidence supported Donna's claimed symptoms.

The ALJ also noted "many inconsistencies in her testimony and the statements she made to her treating physicians, examiners and the noted objective medical findings." R. 21. For example, she "testified she can no longer walk because of loss of balance and pain, yet she also stated that when her husband leaves for work, she goes outside and walks around." R. 21. She gave conflicting reports as to whether she had spoken to a doctor about headaches that she testified she gets every day for two to three hours. R. 21. She stated that her vision is blurry and is getting worse but that she has not sought treatment by an ophthalmologist. R. 21.[7]

Through his thorough examination of the medical record and other statements and his analysis of how Donna's testimony and statements were inconsistent with the objective medical

---

[7] The ALJ also discussed Donna's depression and anxiety. R. 21. Because Donna's arguments at summary judgment and in her objection focus exclusively on her MS, the Court only addresses the ALJ's findings regarding her MS.

evidence, the ALJ has clearly "articulate[d] [a] legitimate reason for his decision" and "buil[t] an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). He cited to two RFC assessments finding that Donna could perform medium work and explained why he gave great evidentiary weight to these opinions. *See* R. 20. Donna argues that the ALJ "ignore[d]" her relapses, but the only evidence to which she points in support is Dr. Dhuna's opinion and her own statements to her doctors of chronic fatigue and difficulty walking. Pl.'s Mot. Summ. J. 10. As discussed above, the ALJ adequately explained why he accorded little weight to Dr. Dhuna's opinion, and the ALJ extensively discussed Donna's statements to the doctors evaluating her and explained why he found her allegations of pain and fatigue inconsistent with the record.

Donna also contends that the fact that she has lesions on her brain, which increased in size in 2016, is objective evidence supporting her subjective complaints. Pl.'s Reply 1. But the ALJ explicitly addressed the MRI showing the lesion's growth in his decision, noting that "the findings on the imaging were stable and there was no mass effect or enhancement[,] [t]he brainstem and cerebellum were intact[, and] [t]here were no signs of acute infarct." R. 17. Indeed, beyond the mere presence of the lesion and its increased size, there was no evidence connecting the lesion to worsening symptoms or new physical limitations requiring greater restrictions.

Finally, Donna asserts that the fact that her neurologist continued her prescriptions at her March 20, 2018 examination shows that she was struggling with her MS. *See* Pl.'s Reply 2. It is unclear how she believes continuing with her medication regimen supports her argument, especially where the ALJ considered the effect of her medications and found the medical evidence to show that when Donna was "compliant with her medications, her impairments are

controlled," R. 22; *see Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018) ("An ALJ may rely on medical evidence that the condition is treated and controlled by medication."). Donna has not identified any evidence that the ALJ simply failed to discuss. *Cf. Herron*, 19 F.3d at 333.

Donna essentially asks the Court to reweigh the evidence and give greater weight to her statements and testimony, but this the Court cannot do. *See Clifford*, 227 F.3d at 869. She believes the ALJ ignored evidence of her flare-ups, Pl.'s Mot Summ. J. 10, but the ALJ was clearly aware of the nature of MS, *see* R. 21 (referencing MS flare-ups), and examined the evidence provided from several years of medical examinations, R. 17–20. Unlike cases involving MS in which the court overturned the Commissioner's denial of benefits, *see, e.g.*, *Stephanie G.*, 2021 WL 2660768, at *9, the ALJ did not ignore evidence of periods of exacerbation in favor of evidence from periods of remission—he examined all of the evidence and found that there was no objective medical evidence showing periods of exacerbation requiring more extreme limitations. The ALJ has adequately supported his decision to deny Donna benefits, and therefore the Court must affirm his decision. *See Elder*, 529 F.3d at 413.

The Court thus finds that the ALJ did not err in determining Donna's RFC.

## CONCLUSION

For the foregoing reasons, Plaintiff Donna K. N.'s objection, ECF No. 18, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF No. 17, is ADOPTED. Plaintiff's motion for summary judgment, ECF No. 13, is DENIED, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's motion for summary affirmance, ECF No. 15, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 17th day of March, 2022.

                                                        s/ Sara Darrow
                                            SARA DARROW
                          CHIEF UNITED STATES DISTRICT JUDGE